## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 08 2020, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Thien,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent,*

December 8, 2020

Court of Appeals Case No.
20A-PC-1134

Appeal from the Grant Superior Court

The Honorable Jeffrey D. Todd, Judge

Trial Court Cause No.
27D01-1804-PC-4

**Robb, Judge.**

# Case Summary and Issue

[1]     In 2016, Kevin Thien was convicted of possession of a narcotic drug, a Level 5 felony; possession of paraphernalia, a Class A misdemeanor; and found to be an habitual offender. Thien appealed his convictions and a panel of this court affirmed. *Thien v. State*, No. 27A02-1705-CR-1088 (Ind. Ct. App. Nov. 21, 2017). In 2018, Thien, pro se, filed a petition for post-conviction relief and in 2019, Thien, by counsel, amended his petition, alleging his trial counsel was ineffective for failing to object to certain hearsay testimony and to a late amendment to the habitual offender enhancement charge. Following a hearing, the post-conviction court granted in part and denied in part Thien's petition, finding Thien's counsel was ineffective for failing to object to the late amendment but not ineffective for failing to object to the testimony. Thien now appeals and raises one issue for our review: whether the post-conviction court erred in denying Thien's petition in part by finding Thien's counsel was not ineffective for failing to object to hearsay testimony. Concluding the post-conviction court did not err, we affirm.

# Facts and Procedural History

[2]     We summarized the facts and procedural history supporting Thien's conviction in his direct appeal:

> In June of 2015, then-Sergeant John Kauffman of the Marion Police Department was a supervisor for the Joint Effort Against Narcotics Drug Task Force in Marion, Indiana. While on duty on June 19, 2015, Sergeant Kauffman observed Thien driving a

vehicle. Sergeant Kauffman knew Thien's driver's license was suspended and requested a uniformed officer initiate a traffic stop. Sergeant Chris Butche conducted the traffic stop in his marked patrol car. Sergeant Kauffman observed from an unmarked vehicle from behind and to the left of the stopped vehicles. Sergeant Kauffman saw Thien look into the driver's side mirror, and then move to his right, toward the passenger. A police canine came to the scene and indicated the odor of drugs. A blue box containing various items was recovered from Brittnie McDaniel, a passenger in Thien's car. McDaniel had the box concealed in her pants. The box contained a hypodermic needle, two hollow glass tubes with blackened residue on the end stuffed with steel wool, and one white pill later identified as hydrocodone.

McDaniel testified that she had just recently been released from jail and on the day of the stop, Thien had driven her to the probation department for an appointment. They were involved in an off-and-on romantic relationship. Sergeant Kauffman encountered them when they were on their way home from the probation department. When Thien noticed the police presence, he pulled a blue box out of a hidden compartment on the dash and asked McDaniel to hide it in her pants. Although she did not know what was in the box, McDaniel did as Thien requested because she was afraid of him. During the stop, when McDaniel was removed from the vehicle for questioning, she took the box out of her pants and gave it to police, stating it was Thien's and he had told her to hide it. A second passenger in the car, sitting directly behind McDaniel, testified that when they were pulled over by police, McDaniel asked Thien, "what do you want me to do with this container" and Thien replied, "I told you not to bring nothing with us." The passenger never saw the blue box.

The State charged Thien with possession of a narcotic drug, a Level 5 felony due to an enhancing circumstance, and possession

of paraphernalia, a Class A misdemeanor. The State also alleged Thien was an habitual offender.

*Id.* at *1 (record citation omitted). At trial, a detective who assisted with the traffic stop testified that, in the blue box, he found "a white oval pill which was identified as hydrocodone." [Prior Case] Transcript at 50. When asked how he identified the pill as hydrocodone, he testified that he used "a pill identifier site[,]" drugs.com, where he "type[s] in the shape, the color, and the imprint [of the pill], and then it will pull up . . . different options of identifying the pill, and you simply match the pill in your hand . . . and then you can print out . . . all the characteristics or description of that pill[.]" *Id.* at 54. The pill he discovered had an imprint that read "Watson 853" and when he put that information into the identifier, "[i]t came back [as] hydrocodone[,]" which is a controlled substance for which Thien did not have a prescription. *Id.* at 56. Thien's trial counsel, Beau White, did not object to the detective's testimony.

[3]     In phase one of Thien's trial, a jury found him guilty of possession of paraphernalia and possession of a narcotic drug, and in phase two, found an enhancing circumstance applied to elevate the possession of a narcotic drug conviction to a Level 5 felony. Thien waived jury consideration of the habitual offender allegation; the trial court received evidence and determined he was an habitual offender. The trial court entered judgment of conviction on the verdicts and ordered Thien to serve concurrent sentences of four years for possession of a narcotic drug and one year for possession of paraphernalia, with the possession of a narcotic drug sentence enhanced by four years due to his habitual offender status, for an aggregate sentence of eight years.

*Thien*, No. 27A02-1705-CR-1088 at *1. Thien appealed, challenging the sufficiency of the evidence supporting his convictions, and a panel of this court affirmed. *See id.* at *2-3.

On April 9, 2018, Thien filed his verified petition for post-conviction relief. On December 16, 2019, Thien, by counsel, amended his petition and alleged his trial counsel was ineffective for failing to object (1) to the detective's hearsay testimony regarding the identification of the pill; and (2) to a late amendment of the habitual offender charge. *See* Appendix to Brief of Appellant, Volume Two at 39-43. An evidentiary hearing was held on March 3, 2020.

At the hearing, Thien's trial counsel, White, testified. When asked why he did not object to the officer's testimony regarding the pill, White explained that his trial strategy was to show that the pill belonged to McDaniel:

> I thought the State's evidence was really weak, and I thought we could win by the State not proving their case beyond a reasonable doubt because we had a witness in the backseat of the vehicle who testified that when they were pulled over . . . my recollection is that Ms. McDaniel said when they got pulled over, Mr. Thien gave her a container that contained paraphernalia and the pill, which is the controlled substance, I thought they had problems with sufficiency for their case because the officer claimed to have seen Mr. Thien lean over and hand something to her. Mr. Thien's vehicle's windows were tinted to the point of pitch black. So I thought there was a credibility issue with the officer's testimony because he couldn't have seen what he claimed to have seen is what I believed was one strength of our case. The biggest strength of our case was there was a third party in the backseat who was not charged with anything I don't believe. So he testified basically that when he pulled over that Mr. Thien never

asked Britt[nie] to take anything nor did Mr. Thien hand her the container in question. . . . So maybe I was overconfident that they had a weak case on sufficiency, and I didn't bother objecting, but there wasn't a strategic reason for that. Again I thought there was going to be reasonable doubt by the fact that Ms. McDaniel was on probation at the time that she was trying to say that Mr. Thien gave her the pill. So she had a motivation to lie. She was going to get a probation violation. She already had at least three probation violations . . . at the time that this happened. So she was looking at a substantial punishment. So I thought that was reasonable doubt, but in particular the fact that we had an independent witness in the backseat who said that Mr. Thien never had possession of the container or the drugs, . . . was kind of what I built our defense around.

[PCR] Transcript, Volume 2 at 7-8. White further testified that his failure to object to the testimony was not a strategic decision but agreed he did not feel that other areas of Thien's case needed to be attacked because he believed the State had a weak case.

[6] On May 12, the post-conviction court issued an order granting in part and denying in part Thien's petition. The post-conviction court concluded Thien's trial counsel was ineffective for failing to object to the late amendment of the habitual offender charge and vacated the enhancement. However, it concluded counsel was not ineffective for failing to object to hearsay:

Conclusions of Law

* * *

6.     Had trial counsel objected to the police officer's testimony, the trial court would have sustained the objection. However, raising questions about whether or not the pill contained a narcotic drug was not part of Thien's trial strategy. Instead, the focus of Thien's strategy centered upon attacking the credibility of the State's witness, Brittnie McDaniel, and her testimony that the drugs found in her pants belonged to Thien rather than her. If this strategy worked, it would earn Thien an acquittal on the lone felony charge, and gut the habitual offender enhancement. As identification of the pill was outside the scope of Thien's defense strategy, trial counsel's failure to make a hearsay objection was merely an omission. . . .

7.     Trial counsel made an opening statement, delivered a closing argument, cross examined the State's witnesses, moved and argued for a directed verdict after the State rested its case, called a witness to testify for the defense, and generally subjected the State's case to adversarial testing. His failure to make a timely hearsay objection did not render his performance deficient, and did not deny Thien effective assistance of counsel.

Appealed Order at 4-5. Thien now appeals the partial denial of his petition for post-conviction relief. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Post-Conviction Standard of Review

[7]     Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise

issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. On appeal, a petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). The petitioner must convince this court that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). When reviewing the post-conviction court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## II.  Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United State Constitution guarantees a criminal defendant the right to counsel and mandates "that the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687, 694). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824.

[9]     When we consider a claim of ineffective assistance of counsel, we apply a "strong presumption . . . that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). And "a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Counsel has wide latitude in selecting trial strategy and tactics, which we afford great deference. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Woodson v. State*, 961 N.E.2d 1035, 1041-42 (Ind. Ct. App. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 110 (2011)), *trans. denied*. "[E]ven the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy,

inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002).

[10] We initially acknowledge that the judge who presided over Thien's original trial is also the judge who presided over the post-conviction proceedings. When the post-conviction judge is the same judge who conducted the original trial, a post-conviction court's findings and judgment are entitled to "greater than usual deference[,]" *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied,* because the judge "was in an exceptional position to assess not only the weight and credibility of the factual evidence [but also] whether it deprived the defendant of a fair trial[,]" *State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003).

[11] Thien argues that the detective's testimony was inadmissible hearsay and White's failure to object to such testimony constitutes deficient performance based on three factors: (1) the detective's testimony was the only evidence as to content of the pill; (2) the testimony was clearly objectionable as inadmissible hearsay; and (3) an objection would not have conflicted with White's trial strategy. *See* Brief of Appellant at 15-16.

[12] When a petitioner claims ineffective assistance of counsel based on counsel's failure to object, the petitioner must show that a proper objection would have been sustained. *Smith*, 765 N.E.2d at 585. The post-conviction concluded, and we agree, that had White objected to the detective's testimony, the objection would have been sustained. Hearsay is a statement that "is not made by the declarant while testifying at the trial or hearing; and . . . is offered in evidence to

prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Generally, hearsay is inadmissible unless it falls into one of the well-delineated exceptions. Evid. R. 802. Here, the out-of-court statement – that the information on drugs.com indicated the pill was hydrocodone – was offered to prove the truth of the matter asserted – that the pill was, in fact, hydrocodone. There is no dispute that the detective's testimony constitutes hearsay, and it does not fall within an exception. Therefore, we conclude that an objection to this testimony would have been sustained.

[13] Nonetheless, we cannot conclude that White's failure to object constituted deficient performance. Although White testified that his failure to object to the testimony was *not* a strategic decision, it *was* consistent with his choice of defense theory and overarching trial strategy.

> [T]he choice of defense theory is a matter of trial strategy. Counsel is given significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best. A reviewing court will not second-guess the propriety of trial counsel's tactics. Trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. This is so even when such choices may be subject to criticism or the choice ultimately proves detrimental to the defendant.

*Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (quotations, alterations, and citations omitted).

[14]     Thien argues that this testimony was so crucial to the State's case as to render White's failure to object deficient. We disagree. In general, one may view White's failure to object as "deficient," but our task is to evaluate whether this failure was deficient in light of the strategy he used, not a different or better strategy. White's decision not to object can be attributed to his trial strategy of attacking witness credibility rather than challenging the contents of the pill.[1] White believed the State had a weak case and would not be able to prove its case beyond a reasonable doubt due to the credibility issues of two witnesses, namely an officer and McDaniel. At the evidentiary hearing, White testified that he "built [Thien's] defense around" the fact that McDaniel had motivation to lie about Thien giving her the pill and there was an independent witness who was in the vehicle at the time of the stop and testified that Thien never had possession of the pill, which White believed was "[t]he biggest strength of our case[.]" [PCR] Tr., Vol. 2 at 7-8. He stated that he "didn't bother objecting, but there wasn't a strategic reason for that." *Id.* at 7. If White's strategy was successful and the jury believed the independent witness' version of events and that the pill belonged to McDaniel, then regardless of the contents of the pill, Thien would not have been convicted of the felony possession charge, which would also have removed the habitual offender enhancement. The fact that

---

[1] Again, we acknowledge that White testified that his failure to object was not a strategic decision. However, we do not view decisions in isolation, but as a whole. *See Smith*, 765 N.E.2d at 585 ("Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective."). And in this case, counsel's overall strategy of focusing on who the pill belonged to was not unreasonable and counsel's failure to object to the identification of the pill was consistent with that strategy.

White's strategy was ultimately unsuccessful does not mean that he was constitutionally ineffective. *Hinesley*, 999 N.E.2d at 983. Similarly, the fact that White, in hindsight, testified that failing to object was a mistake does not alter our analysis.

[15] We cannot conclude White's trial strategy and choice of defense theory aimed at attacking McDaniel's credibility and relying on the independent witness' testimony rather than attacking the contents of the pill itself constitutes performance "so deficient or unreasonable as to fall outside of the objective standard of reasonableness" such that Thien was deprived of the effective assistance of counsel.[2] *Benefield*, 945 N.E.2d at 799.

[16] In sum, the evidence does not lead unerringly and unmistakably to the conclusion that White was ineffective for failing to object to the detective's testimony. We find no error.

# Conclusion

[17] The evidence does not lead unerringly and unmistakably to the conclusion that Thien's trial counsel was ineffective for failing to object to the detective's hearsay testimony. Therefore, the post-conviction court did not err in denying Thien's petition on this issue and we affirm.

---

[2] Having concluded White was not deficient for failing to object, we need not address whether Thien was prejudiced. *French*, 778 N.E.2d at 824.

[18]    Affirmed.

Crone, J., and Brown, J., concur.